# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**CAROL KAE BROOKS**                                                      **PLAINTIFF**

**vs.**                                                  **CIVIL ACTION NO. 1:11CV136-SAA**

**MICHAEL ASTRUE,**
**Commissioner of Social Security**                                     **DEFENDANT**

## MEMORANDUM OPINION

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Carol Kae Brooks for a period of disability and disability insurance benefits (DIB) under Section 216(I) and 223 of the Social Security Act and for supplemental security income payments under Section 1614(a)(3) of the Act. Plaintiff protectively applied for benefits on April 18, 2007, alleging that she became disabled on January 10, 2006 due to back and neck problems, budging disc, arthritis, degenerative disc disease, herniated disc in neck, mitral valve prolapse and joint disease. Docket 8, p. 148. The plaintiff's claim was denied initially on June 6, 2007 and on reconsideration on November 9, 2007. *Id.* at 51-55. Plaintiff timely requested a hearing on September 24, 2009 (*Id.* at 8) and testified at the administrative hearing that was held on July 22, 2009. *Id.* at 17. The ALJ issued an unfavorable decision on September 21, 2009. *Id.* The Appeals Council denied plaintiff's request for a review on April 26, 2011. *Id.* at 5. The plaintiff timely filed this appeal from the Commissioner's most recent decision, and it is now ripe for review.

Because both parties have consented to have a magistrate judge conduct all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

## I. FACTS

The plaintiff was born on September 30, 1972 and was thirty-six years old at the time of the hearing. Docket 8, p. 35. She completed high school and obtained a two-year paralegal degree. *Id.* at 36. Her past relevant work was as a clerk in a rock crushing facility, registrar in a bingo hall, forklift operator and paralegal. *Id.* at 46-47. She contends that she became disabled on January 10, 2006 when she was struck by a vehicle driven by her ex-husband. *Id.* at 37. The ALJ rejected her claims of disability, concluding that even though the plaintiff had severe impairments and could not perform her past relevant work, there nevertheless were jobs which existed in significant numbers in the national economy which plaintiff could perform. Consequently, plaintiff was not disabled.

Plaintiff claims that the ALJ erred by relying on flawed vocational expert testimony to determine that plaintiff can perform jobs that exist in the national economy and that the ALJ failed to properly examine the opinion of plaintiff's treating physician, including contacting the treating physician to resolve any conflict or ambiguity with regard to the physician's opinion.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First,

---

[1] *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

[2] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

plaintiff must prove she is not currently engaged in substantial gainful activity.[3] Second, plaintiff must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[5] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[6] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[7] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[8]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999); citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). The court has the responsibility to

---

[3]20 C.F.R. §§ 404.1520(b), 416.920(b) (2010).

[4]20 C.F.R. §§ 404.1520(c), 416.920(c) (2010).

[5]20 C.F.R. §§ 404.1520(d), 416.920(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

[6]20 C.F.R. §§ 404.1520(e), 416.920(e) (2010).

[7]20 C.F.R §§ 404.1520(g), 416.920(g) (2010).

[8]*Muse*, 925 F.2d at 789.

scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[9] even if it finds that the evidence leans against the Commissioner's decision.[10] The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

**A. Whether the ALJ properly relied upon the testimony of the vocational expert.**

Plaintiff argues that the ALJ's ultimate opinion was flawed because the testimony of the vocational expert ("VE") was flawed. Docket 11, p. 1. The ALJ's hypothetical to the VE

---

[9]*Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[10]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

required that plaintiff's work "not necessitate the pushing or pulling with either the upper or lower extremities. Also would be limited to work that does not require repetitive reaching and handling with – excuse –yeah, with the left – does not require repetitive reaching and handling with the left upper extremity. . . ." Docket 8, p. 47. In response, the VE testified that plaintiff could not perform her previous occupations, but could perform two sedentary jobs, production monitor and surveillance monitor. *Id.* at 48. When questioned by the plaintiff's attorney, the VE testified that the plaintiff would be able to perform the jobs of production monitor and surveillance monitor even with the limitations of no pushing or pulling and repetitive reaching or handling with the upper left extremity. *Id.*

Although plaintiff asserts that the hypothetical given to the VE and the ALJ's RFC recited in the Decision are different [Docket 11, p. 18], this assertion is mistaken. Both the hypothetical and the RFC include the restriction that work not "necessitate the pushing and pulling with either the upper or lower extremities." Docket #8, pp. 23, 43. Next, plaintiff argues that the testimony of the VE is in contradiction to the Dictionary of Occupational Titles ("DOT") because the jobs identified require physical abilities beyond those included in the hypothetical and RFC. Docket 11, p. 18. In response, the Secretary notes that the DOT description of the production monitor/table worker job does not require the individual to frequently reach and handle with both upper extremities. Docket 12, p. 19.

The DOT describes the job of a production monitor/table worker as one that "[e]xamines squares (tiles) of felt-based linoleum material passing along on conveyor and replaces missing and substandard tiles." The DOT classifies the strength factor required to perform the job of production monitor/table worker as sedentary. U.S. Department of Labor, *Dictionary of*

5

*Occupational Titles* § 739.637-182.  Sedentary work is defined by the DOT as "[e]xerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. . . ."  *Id.*, Appendix C.  Nowhere in the description of the production monitor/table worker or the definition of sedentary does the DOT require the use of both extremities.

"The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.  A vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job."  *Fields v. Brown*, 805 F.2d 1168, 1170 (5th Cir. 1986).  In a factually similar case, the Fifth Circuit held that "[t]o the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT . . . we agree with the majority of circuits that the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so."  *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000).

In *Carey v. Apfel*, the plaintiff argued that the ALJ improperly relied upon the VE testimony that he could perform two light, unskilled jobs that required some degree of manual dexterity and fingering despite the fact that the plaintiff only had one arm.  *Id.*  The court held that there was no indication in the record that the VE's testimony that plaintiff could perform those jobs with one arm and hand was incorrect, and, therefore, the ALJ's decision was supported by substantial evidence.  *Id.*  As explained by the Circuit,

>   all kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation. Moreover, claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development at the administrative hearing.

*Id.*

The plaintiff in this action is very similar to the plaintiff in *Carey* in that she cannot utilize her left arm to push or pull. There is nothing in the record to indicate that the VE's testimony that plaintiff can perform the jobs of a production monitor and surveillance monitor with this limitation is incorrect or contradictory to the DOT. Therefore, the ALJ's reliance upon the VE's testimony was proper and the ALJ's decision was supported by substantial evidence.

### B. Whether the ALJ properly considered the treating physician's opinions

Plaintiff contends on appeal that the ALJ's ultimate opinion is not supported by substantial evidence because he did not afford proper weight to her treating physician's opinions and failed to contact the treating physician to resolve conflicts and ambiguities with regard to his opinions. Docket 11, p. 19. Dr. Flannery has been plaintiff's treating physician since 2006.[11] Docket 8, p. 397. Dr. Flannery is a family practitioner and has treated plaintiff for a variety of conditions, including body aches and pains, neck and shoulder pain and headaches. *Id.* at 231-91. The Commissioner responds, and this court agrees, that the ALJ properly discounted Dr. Flannery's opinion that plaintiff is disabled because that opinion is one reserved for the ALJ. Docket 12, pp. 10-11. The Commissioner further argues that the ALJ properly discounted the

---

[11]Dr. Flannery's Medical Source Statement indicates that he has treated plaintiff since 1995, but his medical records indicate that he has only treated her since 2006. (Docket 8, p. 397).

opinions contained in Dr. Flannery's medical source statement because it contained "checklist" type opinions. Docket 12, p. 12. However, as this court has previously held, the Commissioner frequently relies upon this exact type of checklist type opinions from consultative physicians. This response from the Commissioner is without merit and borders on being frivolous.

The Commissioner further responds, and this court agrees, that the ALJ properly discounted Dr. Flannery's opinions because they were not supported by objective evidence. For an ALJ to properly afford lesser weight to the treating physician's medical opinions, he must "perform a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Because the ALJ did not follow these criteria, says plaintiff, his refusal to afford controlling weight to Dr. Flannery's opinions was error as a matter of law. The Commissioner argues that *Newton* does not apply to this case because the record provides "good cause" for the ALJ's finding that the treating physician's opinion was not entitled to controlling weight. Docket 12, p. 13-16.

An ALJ has a duty to contact a treating physician or other medical sources "[w]hen the evidence . . . receive[d] from [a] treating physician . . . is inadequate . . . to determine whether [a claimant] is disabled." 20 C.F.R. §§ 404.1512(e), 416.912(e). These regulations further provide "additional evidence or clarification will be sought when the report from [a] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(2)(1), 416.912(e)(1).

While it is not clear how much weight the ALJ assigned to Dr. Flannery's opinions, it is clear that he did not assign the opinions controlling weight. The ALJ properly considered the

length and frequency of treatment and the type of treatment received, including the fact that plaintiff's care consisted mainly of refills of pain medication, but no diagnostic or clinical tests to support the impairments reported by Dr. Flannery. Docket 8, p. 21. Additionally, the ALJ considered objective evidence such as radiographic studies and CT scans of the plaintiff's head, cervical, lumbar and thoracic spine, which all evidenced normal findings or, at most, minimal findings that are inconsistent with plaintiff's alleged impairments. The court concludes that in light of the objective evidence, the opinions from consultative physicians, and the plaintiff's testimony, the ALJ had sufficient evidence to make a determination as to plaintiff's impairments and the ultimate decision as to her disability without re-contacting Dr. Flannery for further information or clarification.

Reading the record as a whole, the court concludes that the ALJ's opinion is supported by substantial evidence and should be affirmed. It is clear that the ALJ reviewed the entire record, identified the relevant listed impairments, discussed the evidence that was contained in the record and concluded that the balance tipped toward functional ability in determining whether the plaintiff's impairments met or equaled a listed impairment. The ALJ performed a thorough analysis of the plaintiff's impairments and clearly considered the treatment records of the plaintiff's treating physician Dr. Flannery, hospital records, multiple x-rays and scans of plaintiff's head, back and neck, as well as the consultative exams performed at his request. The plaintiff did not provide any evidence, other than her own testimony and opinions from Dr. Flannery – neither of which was supported by any objective evidence – that her neck, back or other alleged impairments affect her ability to work, and the ALJ adequately explained his reasons for questioning the plaintiff's credibility. Therefore, the undersigned holds that the

9

decision of the Commissioner should be affirmed.

## VI. CONCLUSION

For the foregoing reasons, the court finds that the decision of the ALJ was supported by substantial evidence, that a substantial number of jobs exist in Mississippi or the national economy which plaintiff can perform in spite of her limitations and plaintiff is not entitled to benefits under the Social Security Act. This case is affirmed and a final judgment in accordance with this memorandum opinion will issue this day.

SO ORDERED, this, the 19th day of March, 2012.

    /s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE